Danny S. Ashby *(admitted pro hac vice)*
danny.ashby@klgates.com
David Weitman *(admitted pro hac vice)*
david.weitman@klgates.com
John E. Garda *(admitted pro hac vice)*
john.garda@klgates.com
David I. Monteiro *(admitted pro hac vice)*
david.monteiro@klgates.com
**K&L GATES LLP**
1717 Main Street, Suite 2800
Dallas, Texas 75201
Telephone: 214.939.5500
Facsimile: 214.939.5849

Matthew G. Ball (SBN 208881)
matthew.ball@klgates.com
**K&L GATES LLP**
Four Embarcadero Center, Suite 1200
San Francisco, California 9411
Telephone: 415.882.8200
Facsimile: 415.882.8220

Attorneys for Defendant
Wells Fargo Capital Finance, LLC

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| In re: | |
| MORTGAGE FUND '08 LLC, | Bankruptcy Case No. 11-49803-RLE-11 |
| Debtor. | Chapter 11 |
| | Adversary Proceeding No. 12-04137-RLE |
| SUSAN L. UECKER, in her capacity as Trustee of the Mortgage Fund '08 Liquidating Trust, | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF WELLS FARGO CAPITAL FINANCE, LLC'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM** |
| Plaintiff, | |
| vs. | |
| WELLS FARGO CAPITAL FINANCE, LLC, | |
| Defendant. | |

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................................... iii

STATEMENT OF THE ISSUES ............................................................................................. 1

FACTS ....................................................................................................................................... 1

ARGUMENT ............................................................................................................................. 4

    A.    The Complaint Fails to Plead That Wells Fargo Was a Transferee of the Funds ........ 5

        1.    The Complaint Fails to Plead Facts Showing That Wells Fargo Was the Intended Beneficiary of the Transfers ............................................................. 7

        2.    The Complaint Inadequately Alleges That Wells Fargo Was a Subsequent Transferee of the Funds .................................................................................... 9

    B.    The Complaint Does Not State a Claim for Aiding and Abetting Breach of Fiduciary Duty ................................................................................................... 10

        1.    The Complaint Fails to Allege That Wells Fargo Actually Knew of the Managers' Breach of Fiduciary Duty ............................................................. 11

        2.    The Complaint Fails to Allege That Wells Fargo Substantially Assisted the Managers' Alleged Breach of Fiduciary Duty ................................................ 14

CONCLUSION ....................................................................................................................... 17

Case: 12-04137   Doc #: 28   Filed: 09/06/13   Entered: 09/06/13 17:35:39   Page 2 of 23
MEMORANDUM IN SUPPORT OF WELLS FARGO'S MOTION TO DISMISS – ADV. NO. 12-04137

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Ashcroft v. Iqbal*,
   129 S. Ct. 1937 (2009) ........................................................................ 5, 13, 14, 15

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................ 5, 14, 15, 17

*Casey v. U.S. Bank Nat'l Ass'n*,
   26 Cal. Rptr. 3d 401 (Cal. Ct. App. 2005) ....................................................... 11

*Christian Life Ctr. Litig. Def. Cmte. v. Silva (In re Christian Life Ctr.)*,
   821 F.2d 1370 (9th Cir. 1987) ............................................................................ 3

*Danning v. Miller (In re Bullion Reserve of N. Am.)*,
   922 F.2d 544 (9th Cir. 1991) ......................................................................... 7, 8

*Fiol v. Doellstedt*,
   58 Cal. Rptr. 2d 308 (1996) ............................................................................ 10

*Gowan v. Amaranth, LLC (In re Dreier LLP)*,
   452 B.R. 467 (Bankr. S.D.N.Y. 2011) ............................................................... 9

*Henry v. Lehman Commercial Paper, Inc. (In re First Alliance Mortg. Co.)*,
   471 F.3d 977 (9th Cir. 2006) ..................................................................... 11, 12

*Kendall v. Visa USA, Inc.*,
   518 F.3d 1042 (9th Cir. 2008) ......................................................................... 15

*Marder v. Lopez*,
   450 F.3d 445 (9th Cir. 2006) ............................................................................. 1

*Mejia v. Reed*,
   31 Cal. 4th 657 (2003) ...................................................................................... 6

*Merrill v. Dietz (In re Universal Clearing House Co.)*,
   62 B.R. 118 (D. Utah 1986) .............................................................................. 7

*Neilson v. Union Bank of Cal., N.A.*,
   290 F. Supp. 2d 1101 (C.D. Cal. 2003) ..................................................... 10, 15

*Romero v. Countrywide Bank, NA*,
   740 F. Supp. 2d 1129 (N.D. Cal. 2010) ..................................................... 12, 16

*Sharp Int'l Corp. v. State Street Bank & Trust (In re Sharp Int'l Corp.)*,
   281 B.R. 506 (Bankr. E.D.N.Y. 2002), *aff'd*, 403 F.3d 43 (2d Cir. 2005) ............ 11

*Silverman v. K.E.R.U. Realty Corp. (In re Allou Distribs., Inc.)*,
   379 B.R. 5 (Bankr. E.D.N.Y. 2007) ................................................................... 9

*United Nat'l Ins. Co. v. Spectrum Worldwide, Inc.*,
   555 F.3d 772 (9th Cir. 2009) ............................................................................. 6

*Wilson v. Hewlett-Packard Co.*,
    668 F.3d 1136 (9th Cir. 2012) ............................................................................... 1, 5

**STATUTES**

11 U.S.C. § 544 ......................................................................................................... 5, 6

11 U.S.C. § 550 ................................................................................................ 7, 9, 10

CAL. CIV. CODE § 3439 .................................................................................................. 6

CAL. CIV. CODE § 3439.04 ............................................................................................. 6

CAL. CORP. CODE § 17003 ............................................................................................. 4

**RULES**

FED. R. BANKR. P. 7012 ........................................................................................... 1, 17

FED. R. CIV. P. 12 .................................................................................................... 1, 17

MEMORANDUM IN SUPPORT OF WELLS FARGO'S MOTION TO DISMISS – ADV. NO. 12-04137

Case: 12-04137   Doc# 28   Filed: 09/06/12   Entered: 09/06/12 17:35:39   Page 4 of 23

## **STATEMENT OF THE ISSUES**

Plaintiff Susan L. Uecker ("<u>Uecker</u>"), Trustee of the Mortgage Fund '08 LLC ("<u>MF08</u>") Liquidating Trust, filed this adversary complaint (the "<u>Complaint</u>") against Wells Fargo Capital Finance, LLC ("<u>Wells Fargo</u>"). Wells Fargo is a commercial lender that provided a $65 million senior secured credit facility to R.E. Loans, LLC ("<u>REL</u>"), a company managed at times by some of the same individuals who managed MF08. Uecker seeks in her Complaint to hold Wells Fargo liable for approximately $66 million in allegedly improper transfers from MF08 to REL under theories of fraudulent transfer and aiding and abetting the managers' alleged breach of fiduciary duty to MF08.

Wells Fargo moves to dismiss the Complaint because the facts as pled do not state a claim for relief against Wells Fargo. *First*, the Complaint acknowledges that REL, not Wells Fargo, was the initial transferee of the funds in dispute and does not plead sufficient facts to show that Wells Fargo was the intended beneficiary of the initial transfer of such funds. *Second*, the Complaint fails to allege any facts in support of the alternative contention that Wells Fargo was a subsequent transferee of any portion of the funds in dispute. *Third*, the Complaint does not adequately allege Wells Fargo's actual knowledge of, or provision of substantial assistance to, the MF08 managers' breaches of fiduciary duty. For these reasons, the Complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6), made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7012(b).

## **FACTS**

Although Wells Fargo disputes the accuracy of many of the facts pled in the Complaint, for purposes of this Motion, Wells Fargo assumes, as it must, the truth of all facts properly pleaded. *See, e.g.*, *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012). Where appropriate, Wells Fargo also directs the Court's attention to the text of documents referenced and relied upon in the Complaint and submitted as exhibits to this Memorandum of Points and Authorities ("Memorandum"). *See Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) ("A court may consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to

Case: 12-04137    Doc# 28    Filed: 09/06/12    Entered: 09/06/12 17:35:39    Page 5 of 23

the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion.").

MF08 was a "hard money" lending company formed in 2007 and allegedly indirectly owned and operated by Walter Ng and Kelly Ng (collectively and through companies they owned or controlled, the "<u>Managers</u>"). Compl. ¶¶ 2, 3, 16, 43. MF08 made short-term early-stage loans to real estate developers in exchange for high rates of interest and a security interest in the underlying real property. Compl. ¶¶ 2. MF08 made these loans out of funds raised through the issuance of secured debt. Compl. ¶ 2.

REL was a separate hard money lender set up in 2002 and allegedly managed at times by certain of the Managers. Compl. ¶ 3. Unlike MF08, REL originally drew its funding from investors to whom the company sold limited liability company membership interests. Compl. ¶ 19. In late 2007, the non-managing members of REL converted their equity interests in REL to junior secured notes. Compl. ¶¶ 33, 34.

Wells Fargo was a commercial lender to REL, providing REL with a $50 million senior secured credit facility originated on July 17, 2007, and later expanded to $65 million.[1] Compl. ¶¶ 5, 28; *see generally* Exh. 1. Under the terms of the Loan and Security Agreement governing the facility ("<u>LSA</u>"), Wells Fargo had a perfected first-priority secured lien against all of REL's assets—principally the mortgage notes executed in favor of REL by REL's borrowers. Compl. ¶ 28; Exh. 1. In view of the nature of hard money lending, Wells Fargo expected to be repaid through either the principal or interest that REL would collect on those mortgage notes from its borrowers—not, as the Complaint implies, through new investments in REL.

REL's investor-noteholders' security interests were at all times junior to Wells Fargo's. Compl. ¶¶ 28, 32. Prior to the exchange transaction in late 2007 in which the members of REL converted their equity interests to debt, Wells Fargo was REL's only secured creditor. Pursuant to the LSA, Wells Fargo did not object to REL giving its equity investors the opportunity to become secured creditors on the condition that their interests remained subordinate to Wells Fargo's.

---

[1] The Loan and Security Agreement between Wells Fargo and REL, which sets forth the terms and conditions of the credit facility, is attached to this Memorandum as **<u>Exhibit 1</u>**.

The Complaint includes a variety of extraneous allegations concerning the Wells Fargo credit facility that attempt to impute nefarious connotations to a normal commercial lending transaction. Those allegations are largely irrelevant to any of the causes of action asserted in the Complaint, and Wells Fargo only addresses them in this Memorandum to the extent necessary to respond to the claims actually alleged.

For example, the Complaint suggests that the Wells Fargo credit facility was improperly oversecured. Compl. ¶¶ 28, 29. These allegations are inaccurate and appear to rest upon the misapprehension that the REL members somehow had a security interest in REL prior to the origination of the Wells Fargo credit facility by virtue of their equity holdings in the company. *See, e.g.*, Compl. ¶ 28 ("Finally, and perhaps most egregiously, Wells Fargo demanded that it receive a first priority security interest in RE Loans' collateral over [REL's] members."); Compl. ¶¶ 32, 48 (erroneously describing REL "members' equity shares" as having "senior security interests" that only became junior to Wells Fargo's first-priority lien upon conversion of their equity interests to secured debt. There is of course nothing suspect or unusual in a debtholder having a higher claim to security than an equity owner. *See generally Christian Life Ctr. Litig. Def. Cmte. v. Silva (In re Christian Life Ctr.)*, 821 F.2d 1370, 1375 (9th Cir. 1987) ("General creditors rely on the equity cushion created by the investment of shareholders and expect priority in bankruptcy. Shareholders in turn bargain for potential profit in exchange for expected subordination of their interests in bankruptcy." (citations omitted)). That Wells Fargo's lien attached to all of REL's assets was likewise a normal, prudent business practice for a credit facility of this size. The lien, of course, would only have been enforceable to the extent necessary to satisfy the amount REL actually owed Wells Fargo.

The contention that the credit facility was "unauthorized" is similarly specious. *See* Compl. ¶ 30. The REL Operating Agreement[2] expressly vests the REL Managers with "all of the powers described in California Corporations Code Section 17003." *See* Exh. 2, at p. A-17. Corporations Code § 17003 provides that a limited liability company has the power to "[m]ake

---

[2] The REL Operating Agreement is attached to this Memorandum as **Exhibit 2**.

Case: 12-04137    Doc# 28    Filed: 09/06/12    Entered: 09/06/12 17:35:39    Page 7 of 23

contracts and guarantees, incur liabilities, act as surety, and *borrow money*," CAL. CORP. CODE § 17003(d) (emphasis added), as well as the power to "[s]ell, lease, exchange, transfer, convey, mortgage, pledge, and otherwise dispose of all or any part of its property and assets . . . [and] [i]ssue notes, bonds, and other obligations and secure any of them by mortgage or deed of trust or security interest of any or all of its assets. . ." § 17003(e), (h). Accordingly, under the terms of the Operating Agreement, REL, acting through its managers, had the authority to borrow money from Wells Fargo and to grant Wells Fargo a lien on the company's assets to secure that extension of credit.

Beginning in late 2007 and running through much of 2008, MF08 allegedly engaged in certain transactions with REL that are at the core of the Complaint. The Complaint alleges that, in total over this period, $66,226,496 in funds were transferred from MF08 to REL, Compl. ¶ 45, *see also* Compl. Exh. A; that these transfers were actually and constructively fraudulent as to MF08's creditors, Compl. ¶¶ 46, 47; and that the transfers so damaged MF08's financial condition as to constitute breaches of the fiduciary duties the Managers owed to MF08, Compl. ¶ 64. Uecker asserts that the transfers are avoidable under the Bankruptcy Code and California state law.

Through this adversary proceeding, Uecker seeks relief from Wells Fargo for MF08's transfers to REL. Prior to the creation of the Liquidating Trust, the trustee of the MF08 bankruptcy estate sought to recover the same transfers at issue here directly from REL in REL's bankruptcy proceedings in the United States Bankruptcy Court for the Northern District of Texas.[3] REL stipulated to the allowance of that claim.

## ARGUMENT

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must allege sufficient "factual matter to 'state a claim to relief that is plausible on its face.' 'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"

---

[3] *Compare* Compl. Exh. A *with* MF08 Proof of Claim, *In re R.E. Loans, LLC*, No. 11-35865-bjh-11 (Bankr. N.D. Tex. filed Jan. 27, 2012) (attached to this Memorandum as **Exhibit 3**). On June 29, 2012, REL emerged from bankruptcy proceedings, under a confirmed joint plan of reorganization, which became effective by its terms on that date.

*See, e.g.*, *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012) (citations omitted) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)).

The Complaint, which names only Wells Fargo as a defendant, seeks to avoid as fraudulent $66,226,496 in alleged transfers from MF08 to REL and to characterize those transfers as breaches of the Managers' fiduciary duties to MF08. As explained in further detail below, the Complaint asserts that Wells Fargo should be held liable as a beneficiary or subsequent transferee of the transfers at issue and that Wells Fargo aided and abetted the Managers' breaches of their fiduciary duties. But the Complaint inadequately pleads facts supporting the core of each of these contentions: the Complaint does not allege legally-sufficient facts to show that (1) Wells Fargo was the entity for whose benefit MF08's Managers made the initial transfers to REL, (2) Wells Fargo was a subsequent transferee of the funds at issue, or (3) Wells Fargo actually knew of or substantially assisted the Managers' purported breaches of their fiduciary duties to MF08. The Complaint accordingly states no claims upon which this Court could grant relief against Wells Fargo and should be dismissed.

**A.     The Complaint Fails to Plead That Wells Fargo Was a Transferee of the Funds**

In the first and second causes of action, Uecker seeks relief against Wells Fargo for transfers that MF08 made to REL on the theory that those transfers were both actually and constructively fraudulent as to MF08's creditors. These causes of action are inadequately pled against Wells Fargo for several related reasons. The common deficiency is that implied by the description of the claim itself—the Complaint fails to articulate a legally-cognizable basis for holding *Wells Fargo* liable for transfers that MF08 made *to REL*.

Uecker relies upon 11 U.S.C. § 544(b) for authority to bring these fraudulent transfer claims. That section authorizes the trustee of a bankruptcy estate[4] to "avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under

---

[4] While Uecker is not the trustee of the MF08 estate, the Joint Combined Chapter 11 Plan of MF08, as confirmed by this Court, and the associated Liquidating Trust Agreement specifically vested the trustee's statutory power to bring claims to avoid fraudulent transfers under § 544 in Uecker as the Liquidating Trustee of the MF08 Liquidating Trust.

5

applicable law by a creditor holding an unsecured claim . . . ."  § 544(b).  This provision allows Uecker to bring fraudulent transfer claims under "applicable [state] law"—here, the California Uniform Fraudulent Transfers Act ("CUFTA"), CAL. CIV. CODE § 3439.

The CUFTA provides that:

> (a)  A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation as follows:
>
> > (1)  With actual intent to hinder, delay, or defraud any creditor of the debtor.
> >
> > (2)  Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor either:
> >
> > > (A)  Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction.
> > >
> > > (B)  Intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due.

CAL. CIV. CODE § 3439.04.  The Complaint refers to the claims brought under subsection (a)(1) as for avoidance of actual fraudulent transfers and those brought under subsection (a)(2) as for avoidance of constructive fraudulent transfers.

As a general principle, the California "UFTA permits defrauded creditors to reach property in the hands of a transferee."  *Mejia v. Reed*, 31 Cal. 4th 657, 663 (2003).   Nowhere in the Complaint does Uecker allege that MF08 made any direct transfer of funds or property to Wells Fargo or even that Wells Fargo is a transferee.  Indeed, the Complaint expressly states that all the transfers at issue were from MF08 to REL.  *See, e.g.*, Compl. ¶ 48 ("RE Loans was the initial transferee of the fraudulent transfers . . . .").[5]  Uecker instead appears to rely on two alternative

---

[5] The MF08 estate has likewise treated REL as the initial transferee of these funds in the REL bankruptcy proceedings.  As noted above, MF08's bankruptcy estate filed an allowed claim in the REL bankruptcy proceedings seeking recovery of the exact same transfers on the theory that REL was the initial transferee.  *See* Exh. 3.  Uecker would therefore likely be barred by the doctrine of judicial estoppel from asserting now that Wells Fargo, not REL, was the initial transferee.  *See generally United Nat'l Ins. Co. v. Spectrum Worldwide, Inc.*, 555 F.3d 772, 778–79 (9th Cir. 2009).

6

grounds for recovering a fraudulent transfer from a party other than the initial transferee of the funds, neither of which provides a basis for relief here. First, the Bankruptcy Code permits a trustee to recover an avoided fraudulent transfer from "the entity for whose benefit such transfer was made" as if that entity were the initial transferee. *See* 11 U.S.C. § 550(a)(1). Second, a trustee may likewise recover an avoided fraudulent transfer from any "immediate or mediate [subsequent] transferee" under certain circumstances. *See id.* § 550(a)(2). Neither of these theories of liability offers a basis for a claim against Wells Fargo because the Complaint fails to plead adequate facts in support of either theory.

        1.    <u>The Complaint Fails to Plead Facts Showing That Wells Fargo Was the</u>
<u>Intended Beneficiary of the Transfers</u>

Under the Ninth Circuit's authoritative interpretation of § 550(a)(1) of the Bankruptcy Code, Wells Fargo was not an "entity for whose benefit the transfer[s]" from MF08 to REL "w[ere] made." Quoting with approval from *Merrill v. Dietz (In re Universal Clearing House Co.)*, 62 B.R. 118, 128 n.12 (D. Utah 1986), the Ninth Circuit explained that the phrase "entity for whose benefit the transfer was made"

> implies a requirement that, in transferring the avoided funds, the debtor must have been motivated by an intent to benefit the individual or entity from whom the trustee seeks to recover. It is not enough that an entity benefit from the transfer; the transfer must have been *made for his benefit.*

*Danning v. Miller (In re Bullion Reserve of N. Am.)*, 922 F.2d 544, 547–48 (9th Cir. 1991) (emphasis added in *Bullion Reserve*). The Complaint offers the conclusory allegations that "Wells Fargo benefited from the fraudulent transfers from MF08 to RE Loans," Compl. ¶ 48, and that "Wells Fargo was the entity for whose benefit the transfers were made," *id.*, but the underlying factual allegations in the Complaint fail to support these conclusions of law.

The two respects in which the Complaint contends that Wells Fargo "benefited" from the transfers are (1) that "the transfers strengthened Wells Fargo's security interest in RE Loans," Compl. ¶ 48, and (2) that "[b]y receiving money directly from MF08, RE Loans was able to pay distributions to its investors . . . , decreasing the strength of their claims against RE Loans'

collateral and increasing the likelihood that Wells Fargo would receive a full return on its line of credit," *id.* There are two distinct flaws in these contentions.

First, the contentions are contradicted by Uecker's own pleading that Wells Fargo held "a first priority security interest in RE Loans' collateral,"[6] which amounted to "over $700 million" in assets and a "collateral-to-debt ratio of over 10-to-1." Compl. ¶ 28. The alleged transfers from MF08 to REL therefore did nothing to "strengthen[] Wells Fargo's security interest" in REL's assets as against REL's noteholders. Both before and after the alleged transfers, REL's debt to Wells Fargo was fully secured and senior in priority to the noteholders' interests. REL's ability to "pay distributions to its [noteholders]" accordingly did not "decreas[e] the strength of [the noteholders'] claims against" REL's assets as against Wells Fargo's. Wells Fargo's security interest had priority in any event, and the alleged transfers had no effect on the "strength" of that priority. If anything, the alleged transfers were to Wells Fargo's detriment. The Complaint alleges that REL received approximately $66 million from MF08, Compl. ¶ 45, but made $120 million in distributions to REL's junior noteholders, Compl. ¶ 48. The Complaint also alleges that Wells Fargo agreed to release its liens on certain REL-owned notes—thus decreasing Wells Fargo's collateral for the senior secured credit facility—so that those notes could be transferred to MF08. Compl. ¶ 66. The Complaint does not allege that REL's debt to Wells Fargo was reduced by any of these transfers. Uecker's effort to label Wells Fargo a "beneficiary" of the transfers is therefore directly contradicted by the factual allegations on which she relies in support of that contention.

Second, even if the transfers did result in some indirect benefit to Wells Fargo, much more is required to satisfy the Ninth Circuit's standard for beneficiary-transferee status. *See Bullion Reserve*, 992 F.2d at 548 ("It is not enough that an entity benefit from the transfer . . . ."). To state a claim for relief under this theory of recovery, the Complaint must allege facts showing that MF08 was "*motivated by* an intent to benefit" Wells Fargo in effecting the transfers to REL. *See id.* at 547 (emphasis added). The Complaint contains no such allegations. Rather, to the extent

---

[6] This allegation is undisputedly correct and supported by the LSA. *See* Exh. 1 at 35–38.

Case: 12-04137   Doc# 32   Filed: 09/06/12   Entered: 09/06/12 13:25:49   Page 12 of
23

Uecker alleges that MF08 or its Managers intended for anyone other than REL to benefit from the transfers, those beneficiaries were the REL noteholders, not Wells Fargo. *See* Compl. ¶ 48 ("By receiving money directly from MF08, RE Loans was able to pay distributions to its investors (approximately $120 million in the period after the exchange offer) . . . .").

Wells Fargo was therefore not "the entity for whose benefit the transfers were made" within the meaning of § 550(a)(1). Uecker cannot recover against Wells Fargo under this theory of liability.

2.  The Complaint Inadequately Alleges That Wells Fargo Was a Subsequent Transferee of the Funds

The Complaint alleges in the alternative that, to the extent REL used any of the money to repay Wells Fargo, Wells Fargo was a subsequent transferee of the funds MF08 allegedly transferred to REL. Section 550(a)(2) allows a trustee to recover an avoided transfer against an "immediate or mediate transferee of [an] initial transferee." In support of this theory of liability, Uecker pleads, on information and belief, *see* Compl. at 2, that:

> Alternatively, Wells Fargo benefited from the fraudulent transfers from MF08 to RE Loans as a subsequent transferee of RE Loans. To the extent RE Loans used any of the money transferred from MF08 to directly repay Wells Fargo for its line of credit, Wells Fargo was an immediate transferee of RE Loans.

Compl. ¶ 49. The applicable case law requires substantially more detailed factual pleading to state a claim against a subsequent transferee. "To establish an entity as a subsequent transferee, courts have required that the complaint contain 'the necessary vital statistics—the who, when, and how much' of the purported transfers" from the alleged initial transferee, REL, to the alleged subsequent transferee, Wells Fargo. *See Gowan v. Amaranth, LLC (In re Dreier LLP)*, 452 B.R. 467, 478 (Bankr. S.D.N.Y. 2011) (quoting *Silverman v. K.E.R.U. Realty Corp. (In re Allou Distribs., Inc.)*, 379 B.R. 5, 32 (Bankr. E.D.N.Y. 2007)). The Complaint fails to meet this standard. Uecker does not even allege that any such transfers actually occurred. Indeed, the

relevant allegation in paragraph 49 of the Complaint is doubly qualified as pleaded on "information and belief" and by the "[t]o the extent" introductory phrase.[7]

The Complaint accordingly fails to state a claim against Wells Fargo on the theory that Wells Fargo was a subsequent transferee of the transfers from MF08 to REL. Uecker is required to plead more than a single conclusory, qualified assertion that REL might have transferred some of the funds at issue to Wells Fargo.

* * *

Uecker's claims for fraudulent transfer against Wells Fargo are therefore inadequately pled under any potentially applicable theory of liability. The causes of action should be dismissed for failure to state a claim.

## B. The Complaint Does Not State a Claim for Aiding and Abetting Breach of Fiduciary Duty

In the third cause of action, the Complaint asserts that Wells Fargo aided and abetted the Managers in breaching their fiduciary duties to MF08. Under California law, liability for aiding and abetting breach of fiduciary duty can be established in one of two ways: (1) actual knowledge of and substantial assistance to another's breach of duty, or (2) substantial assistance and an independent breach of duty owed by the defendant to the plaintiff. *See, e.g.*, *Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1118 (C.D. Cal. 2003) (citing *Fiol v. Doellstedt*, 58 Cal. Rptr. 2d 308 (1996)). The cause of action at issue here is predicated solely on the former theory; Wells Fargo owed no direct duty to MF08, and Uecker makes no assertion to the contrary.

In brief, the Complaint alleges that the Managers owed a fiduciary duty to MF08 and that the Managers breached that duty by funneling money from MF08 to REL in exchange for real estate notes they characterize as inadequate consideration, ultimately rendering MF08 insolvent. The Complaint further alleges that Wells Fargo knew about the Managers' breach of fiduciary

---

[7] Further, even if REL had used any money to repay Wells Fargo, under the terms of the LSA, the funds would have reduced the amount outstanding on the senior security credit facility and created potential additional availability under the facility. REL then might have been able to receive additional advances from Wells Fargo. Wells Fargo would therefore have a defense of good faith and value to any claim based on its purported status as a subsequent transferee. *See* 11 U.S.C. § 550(b).

duty because Wells Fargo was aware of MF08's creation and "true purpose." Compl. ¶¶ 11, 40, 50, 65. As explained below, the Complaint does not adequately allege Wells Fargo's actual knowledge of those purported breaches of duty. The Complaint additionally does not present a coherent, plausible narrative of what actions Wells Fargo took that constituted "substantial assistance" to the Managers in their alleged breach of fiduciary duty to MF08. For either of these reasons, Uecker's claim that Wells Fargo aided and abetted the Managers' breach of their fiduciary duties to MF08 should be dismissed.

### 1. The Complaint Fails to Allege That Wells Fargo Actually Knew of the Managers' Breach of Fiduciary Duty

To state a claim for aiding and abetting breach of fiduciary duty, a plaintiff must plead facts showing that the defendant had "*actual knowledge* of the specific primary wrong the defendant substantially assisted." *Henry v. Lehman Commercial Paper, Inc. (In re First Alliance Mortg. Co.)*, 471 F.3d 977, 993–95 (9th Cir. 2006) (citing *Casey v. U.S. Bank Nat'l Ass'n*, 26 Cal. Rptr. 3d 401, 406 (Cal. Ct. App. 2005)) (emphasis added). To do so, the plaintiff must "first 'identify precisely the breach of fiduciary duty for which [the plaintiff] seeks to hold [the defendant] liable,'" *Casey*, 26 Cal. Rptr. 3d at 409 (quoting *Sharp Int'l Corp. v. State Street Bank & Trust (In re Sharp Int'l Corp.)*, 281 B.R. 506, 513 (Bankr. E.D.N.Y. 2002), *aff'd*, 403 F.3d 43 (2d Cir. 2005)), and then plead facts showing that the defendant had actual knowledge that the primary violator was committing that precise breach of duty, *see Casey*, 26 Cal. Rptr. 3d at 409.

The leading California case on aiding and abetting breach of fiduciary duty holds that a defendant's knowledge that "something fishy was going on with the accounts," or that the alleged violators were engaged generally in "wrongful or illegal conduct," is not sufficient to demonstrate *actual* knowledge. *See id.* at 409, 412. Indeed, in *Casey*, the defendant's knowledge that the primary violators "were withdrawing money from . . . accounts with the use of forged checks and checks that exceeded written limits, and . . . that the [primary violators] were carrying large, unreported amounts of cash out of the bank in unmarked duffel bags," 26 Cal. Rptr. 3d at 409, was held an insufficient basis to conclude that the defendant also knew that the primary violators were "misappropriating funds," the specific breach of fiduciary duty at issue, *id.* at 412. As the Ninth

Circuit restated this rule, "the actual knowledge standard . . . require[s] more than a vague suspicion of wrongdoing." *In re First Alliance Mortg.*, 471 F.3d at 993 n.4.

Uecker asserts here that the Managers breached their fiduciary duty to "refrain from taking actions detrimental to MF08's financial and other interests" by "funneling money from MF08 to RE Loans and exposing MF08 to liability from its creditors by making it impossible to repay them." Compl. ¶ 64. Therefore, to adequately plead the actual knowledge element of aiding and abetting, the Complaint must allege facts plausibly showing that (1) Wells Fargo actually knew that the Managers were transferring funds from MF08 to REL to MF08's financial detriment and (2) Wells Fargo actually knew that those transfers were in breach of the fiduciary duties the Managers owed to MF08. *See Romero v. Countrywide Bank, NA*, 740 F. Supp. 2d 1129, 1146 (N.D. Cal. 2010) ("Plaintiffs must plead factual allegations that each of the . . . Defendants knew of [the primary violator's] alleged misconduct in advance . . . [and] knew that the alleged misconduct constituted a breach of duty owed by [the primary violator] to Plaintiffs . . . .").

The Complaint fails to plead such facts. The Complaint adequately pleads that Wells Fargo knew, in March 2008, that certain transfers from MF08 to REL had occurred. Compl. ¶ 41. But the Complaint does not show that Wells Fargo actually knew that those transfers were to MF08's financial detriment at all—much less that the transfers constituted a breach of the Managers' fiduciary duties to MF08. Instead, the Complaint pleads on information and belief only that "Wells Fargo knew about the fraudulent scheme between MF08 and RE Loans." Compl. ¶ 40. As the Supreme Court explained in *Ashcroft v. Iqbal*, simply pleading "knowledge" without supporting facts that would make the assertion of knowledge plausible does not meet the requirements of Federal Rule of Civil Procedure 8:

> We begin our analysis by identifying the allegations in the complaint that are not entitled to the assumption of truth. Respondent pleads that petitioners "*knew of*, condoned, and willfully and maliciously agreed to subject [him]" to harsh conditions of confinement "as a matter of policy, solely on account of [his] religion, race, and/or national origin and for no legitimate penological interest." The complaint alleges that Ashcroft was the "principal architect" of this invidious policy, and that Mueller was "instrumental" in adopting and executing it. These bare assertions . . . amount to nothing more than a "formulaic recitation of the elements" of a constitutional discrimination claim. . . . As such, the allegations are conclusory and not entitled to be assumed true.

12

556 U.S. 662, 669 (2009) (citations omitted; emphasis added). The supporting facts that Uecker does plead provide no additional support to make the Complaint's bald allegation of knowledge plausible. The Complaint relies on the alleged facts—again asserted only on information and belief—that (1) Wells Fargo "knew RE Loans could not raise new money to repay it," Compl. ¶ 40, and (2) "Wells Fargo knew about the creation and true purpose of MF08 because the plan for its creation was included in the line of credit agreement with RE Loans," *id.*; *see also* Compl. ¶ 65.

Neither of these two factual allegations supports the inference the Complaint demands. The first is a conclusory allegation of knowledge on its own that suffers from a significant logical omission: regardless of whether REL could "raise new money" from investors to repay Wells Fargo, that was never the presumed source of funds for repayment. REL could still earn money from interest on the loans it had already made, could collect on the principal of the underlying loans, or, if necessary, could refinance the credit facility with another lender. The second is contradicted by the very document the Complaint references, the LSA—the "line of credit agreement" cited in paragraphs 40 and 65 of the Complaint. The LSA does not "include[]" the "plan for [MF08's] creation" at all. *See* Compl. ¶ 65. The LSA obliquely acknowledges the fact that REL or its affiliates might create other debt-fund mortgage lenders or servicers, *see* Exh. 1, at 15 (defining "New Fund"),[8] but the only use of the defined term in the entire remainder of the LSA is to exclude it from the definition of the term "Subsidiary," *see id.* at 19. MF08 likely also met the definition of "Affiliate" under the LSA, *see* Exh. 1, at 1, and was therefore subject to various provisions of the LSA relating to REL's affiliates generally, including, for example, § 7.13, which describes permitted and prohibited transactions with affiliates. *See* Exh. 1, at 51. In all events, no "plan for [MF08's] creation" and operation appears anywhere in the LSA.

In summary, the well-pleaded allegations of the Complaint assert no more than (i) that REL would rely on business income and its existing assets instead of new investments to repay

---

[8] The provision at issue reads: "'<u>New Fund</u>' means any new corporation, partnership, limited liability or other entity formed by a Borrower or any Affiliate of a Borrower after the Effective Date for the purpose of originating, making, owning or servicing mortgage loans funded principally using debt securities, so long as such entity is not capitalized or otherwise funded with assets of such Borrower (as opposed to the assets of the members of a Borrower or an Affiliate of a Borrower)." Exh. 1, at 15.

Wells Fargo and (ii) that Wells Fargo's lending agreement acknowledges that entities like MF08 might have been created. From these two facts, Uecker asks the Court to infer that Wells Fargo actually "knew about the . . . true purpose of MF08" and then to further infer that Wells Fargo actually knew in advance that the alleged purpose entailed an elaborate scheme by which the Managers would "funnel[] money from MF08 to RE Loans and expos[e] MF08 to liability from its creditors by making it impossible to repay them." Compl. ¶¶ 64, 65. Even assuming that these inferences and interpretations are conceivable, if far-fetched, Uecker must, under *Twombly* and *Ashcroft*, do more than plead facts "consistent with" her theory of liability. *See Twombly*, 550 U.S. at 554; *see also Ashcroft*, 556 U.S. at 678 ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" (quoting *Twombly*, 550 U.S. at 557)). That liability is "conceivable" is not sufficient: the facts pled here are "just as much in line with a wide swath of rational and [lawful] business strategy" on Wells Fargo's part and therefore do not, without more, meet the plausibility requirement. *See Twombly*, 550 U.S. at 554; *see also id.* at 557, 570 ("The need at the pleading stage for allegations plausibly suggesting (not merely consistent with) [liability] reflects the threshold requirement of Rule 8(a)(2) that the 'plain statement' possess enough heft to 'sho[w]' that the pleader is entitled to relief.' . . . Because the plaintiffs here have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed").

In short, Uecker's assertion that Wells Fargo actually knew that the Managers breached their fiduciary duties to MF08 is implausible on the face of the Complaint. The cause of action for aiding and abetting breach of fiduciary duty may be dismissed on that basis alone.

2. The Complaint Fails to Allege That Wells Fargo Substantially Assisted the Managers' Alleged Breach of Fiduciary Duty

The Complaint likewise inadequately pleads that Wells Fargo provided substantial assistance to the Managers' alleged breaches of fiduciary duty—the second element of the aiding and abetting cause of action. "Substantial assistance" in this context means that the alleged aider

14

and abettor's conduct "was a 'substantial factor' in bringing about the injury purportedly suffered by the" plaintiff. *See Neilson*, 290 F. Supp. 2d at 1129.

Again, the specific primary violation at issue is the Managers' alleged transfer of funds from MF08 to REL to MF08's detriment allegedly in breach of the fiduciary duties the Managers owed MF08. To properly plead substantial assistance, the Complaint must allege facts showing that Wells Fargo engaged in conduct that was plausibly a substantial factor in bringing about the Managers' breaches of fiduciary duty in effecting those transfers. It does not. Rather, the Complaint asserts two actions that Wells Fargo took that allegedly constituted substantial assistance:[9] first, that Wells Fargo purportedly "facilitated the creation of MF08 to" ensure that REL could repay the credit facility to Wells Fargo, Compl. ¶ 66, and, second, that Wells Fargo allegedly directed REL to transfer promissory notes owned by REL to MF08 after discovering that MF08 had transferred $40 million to REL without security, *id.*; *see also* Compl. ¶ 41. Neither allegation adequately pleads substantial assistance.

The allegation that Wells Fargo "facilitated the creation of MF08" does not support an inference of substantial assistance for three reasons. First, the allegation lacks any factual specificity whatsoever; it is a "naked assertion devoid of further factual enhancement" that the Supreme Court has rejected as noncompliant with Federal Rule of Civil Procedure 8, *see Ashcroft*, 556 U.S. at 678; while a facially factual assertion, it is so vague as to fail to "answer the basic questions: who, did what, to whom (or with whom), where, and when?" *Kendall v. Visa USA, Inc.*, 518 F.3d 1042, 1048 (9th Cir. 2008) (citing *Twombly*, 550 U.S. at 557). Second, the assertion appears to rest on the premise that the LSA somehow required or directed the Managers to create MF08, *compare* Compl. ¶ 66 *with id.* ¶ 40, which, as discussed above, it does not. *See* Exh. 1, at 15, 19. Third, the underlying legal contention is illogical: Wells Fargo could not have assisted the Managers in breaching their fiduciary duties to MF08 *by the act of creating MF08 itself*. For that action to constitute substantial assistance, Uecker would have to plead facts

---

[9] As with the knowledge element, the unelaborated allegation that Wells Fargo "substantially assisted and/or encouraged MF08's managers' breach of fiduciary duty," Compl. ¶ 66, "amount[s] to nothing more than a 'formulaic recitation of the elements'" and should be disregarded. *See Ashcroft*, 556 U.S. at 681 (quoting *Twombly*, 550 U.S. at 555).

Case: 12-04187 Doc# 32 Filed: 09/06/12 Entered: 09/06/12 17:25:19 Page 19 of 23
MEMORANDUM IN SUPPORT OF WELLS FARGO'S MOTION TO DISMISS ADV. NO. 12-04137

showing that Wells Fargo knew *before* MF08 was even created that the entire plan of management of MF08 would be in breach of the fiduciary duties that would come into being upon its creation. *Cf. Romero*, 740 F. Supp. 2d at 1146 (explaining that "Plaintiffs must plead factual allegations that each of the . . . Defendants knew of [the primary violator's] alleged misconduct *in advance*" of providing the alleged substantial assistance (emphasis added)). As discussed above in connection with the knowledge element, Uecker has pled no such facts. The Complaint instead alleges that Wells Fargo first became aware of the transactions that Uecker contends constituted the specific breach of fiduciary duty at issue in March of 2008, Compl. ¶ 41, several months *after* MF08 was created in December 2007, Compl. ¶ 36.

The Complaint's alternative allegation of substantial assistance is that,

> [a]fter MF08 had transferred $40 million to RE Loans without any security, Wells Fargo became concerned and instructed the managers of RE Loans to characterize the transfers as "sales" of loans from RE Loans to MF08. Wells Fargo allowed the managers to personally select several properties RE Loans had previously assigned to Wells Fargo (as collateral for the line of credit) and reassign them to MF08.

Compl. ¶ 66; *see also* Compl. ¶ 41. Even accepting this allegation as true, it is not clear how Wells Fargo's alleged actions were in any respect "a substantial factor in bringing about the injury" MF08 purportedly suffered from the transfers. Rather, under Uecker's allegations, Wells Fargo's actions actually *helped* MF08. As explained above, before Wells Fargo allegedly intervened, the Managers had allegedly transferred $40 million in funds from MF08 to REL apparently in exchange for an unspecified unsecured debt from REL to MF08. *Cf.* Compl. ¶¶ 41, 66 (characterizing the transfer as "without any security"). After Wells Fargo allegedly intervened, REL allegedly gave MF08 value for the transfers—at Wells Fargo's expense—in the form of notes receivable that previously had been collateral pledged to Wells Fargo. Nothing that Wells Fargo is alleged to have done worsened MF08's position or contributed to the harm the transfers purportedly caused.

*     *     *

Uecker's claim against Wells Fargo for aiding and abetting the Managers' purported breach of their fiduciary duties to MF08 should be dismissed. The claim fails on each of two

16

independent grounds: (1) the Complaint fails to plead facts plausibly showing that Wells Fargo had actual knowledge of those breaches of fiduciary duty and (2) the Complaint's allegations that Wells Fargo provided substantial assistance to the Managers in breaching their fiduciary duties are so illogical and vague as to fail to raise Uecker's claim to a "right to relief above the speculative level." *See Twombly*, 550 U.S. at 555.

## CONCLUSION

For the foregoing reasons, Wells Fargo respectfully requests that the Court dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6) and Federal Bankruptcy Procedure 7012(b) for failure to state a claim upon which relief may be granted. The Complaint fails to allege that (1) Wells Fargo was the initial transferee of the funds in dispute or the intended beneficiary of the initial transfer; (2) Wells Fargo was the subsequent transferee of any of the funds; or (3) Wells Fargo had actual knowledge of or provided substantial assistance to the MF08 managers' purported breaches of fiduciary duty.

17

Case: 12-04137   Doc# 32   Filed: 09/06/12   Entered: 09/06/12 17:35:49   Page 21 of 23

Respectfully submitted,

K&L Gates LLP

Dated: September 6, 2012          By: _____

Danny S. Ashby *(admitted pro hac vice)*
danny.ashby@klgates.com
David Weitman *(admitted pro hac vice)*
david.weitman@klgates.com
John E. Garda *(admitted pro hac vice)*
john.garda@klgates.com
David I. Monteiro *(admitted pro hac vice)*
david.monteiro@klgates.com
K&L Gates LLP
1717 Main Street, Suite 2800
Dallas, Texas 75201
Telephone: 214.939.5500
Facsimile: 214.939.5849

Matthew G. Ball (SBN 208881)
matthew.ball@klgates.com
K&L Gates LLP
Four Embarcadero Center, Suite 1200
San Francisco, California 9411
Telephone: 415.882.8200
Facsimile: 415.882.8220

Attorneys for Defendant
Wells Fargo Capital Finance, LLC

18

1

**CERTIFICATE OF SERVICE**

2

3   I certify that on September 6, 2012, a true and correct copy of the foregoing was served via

4   e-mail through the Bankruptcy Court's Electronic Case Filing System on those parties that have

5   consented to such service, including counsel for Plaintiff Susan L. Uecker, Trustee of the

6   Mortgage Fund '08 LLC Liquidating Trust.

7                                                        _____
                                                          Danny S. Ashby
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

19